UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| ANTHONY LONG,<br><br>    Plaintiff,<br><br>vs.<br><br>RTM ALABAMA, INC.,<br><br>    Defendant. | CIVIL Action No. CV-95-8-2808-NE<br><br>ENTERED<br><br>AUG 11 1997 |
| EZELL WILLIAMS,<br><br>    Plaintiff,<br><br>vs.<br><br>RTM ALABAMA, INC.,<br><br>    Defendant. | Civil Action No. CV-96-C-2171-NE |

MEMORANDUM OPINION

These consolidated cases are before the court on plaintiff Ezell Williams' request for class certification pursuant to Rule 23(a) and 23(b)(2), *Fed.R.Civ.P.* Upon consideration of the motion, pleadings, and evidentiary submissions,[1] this court determines the request is due to be denied.

I. STANDING

Williams alleges he and the class he seeks to represent were subjected to unlawful discrimination based upon race (African-American), in violation of 42 U.S.C. § 1981, 42 U.S.C. § 1983, the

---

[1] It is not necessary to conduct an evidentiary hearing before deciding a motion for class certification. *Grayson v. K Mart Corporation*, 79 F.3d 1086, 1099 (11th Cir.), cert. denied, ___ U.S. ___, 117 S.Ct. 447, 136 L.Ed.2d 332 (1996).

Equal Pay Act, 29 U.S.C. § 206(d), and Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e et *seq*. Plaintiff was formerly employed as an assistant manager at a restaurant owned by defendant, and now seeks to represent a class consisting of:

> those black persons who are now employed, were employed, might have been employed or might become employed by Defendant and who have been, and continue to be or might be adversely affected by the practices complained of [in plaintiff's complaint].

(Plaintiff's complaint, at ¶ 10.)

The Eleventh Circuit holds that any analysis of class certification:

> must begin with the issue of standing and the procedural requirements of Title VII. Thus, the threshold question is whether the named plaintiffs have individual standing, in the constitutional sense, to raise certain issues. Only after the court determines the issues for which the named plaintiffs have standing should it address the question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others.

*Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987)(citations omitted), *cert. denied*, 486 U.S. 1005, 108 S.Ct. 1729, 100 L.Ed.2d 193 (1988).

**A.   Title VII Claims**

Defendant asserts Ezell Williams did not file a charge of discrimination with the Equal Employment Opportunity Commission. Mr. Williams failed to provide any proof to the contrary. While Williams' complaint does allege he complied with Title VII's

2

administrative prerequisites,² he did not present evidence to support that contention. He did not submit copies of the charge of discrimination allegedly filed with the EEOC or his notice of right to sue. That is contrary to this court's December 3, 1996 order, which clearly states: "plaintiffs shall file in verified form all evidence supporting the allegation this action appropriately should proceed as a class action and a brief addressing the class action issue." Thus, even if this court were inclined to analyze Williams' Title VII class claims, there is no objective starting point from which to begin the analysis and determine the class size. *See Payne v. Travenol Laboratories, Inc.*, 673 F.2d 798, 813 (5th Cir.), *cert. denied*, 459 U.S. 1038, 103 S.Ct. 452, 74 L.Ed.2d 605 (1982)("The opening date for membership in a class for a Title VII claim should be set by reference to the earliest charge filed by a named plaintiff").

Plaintiff Williams has correctly neglected to raise the "single-filing rule" in an attempt to redeem his failure to file an EEOC charge. Under that rule, "as long as at least one named plaintiff timely filed an EEOC charge, the precondition to a Title VII action is met for all other named plaintiffs and class members." *Jones v. Firestone Tire and Rubber Company*, 977 F.2d

---

²In paragraph 6 of his complaint, Ezell Williams alleges that he "has fulfilled all conditions precedent to the institution of this action under Title VII of the Civil Rights Act of 1964, as amended. Plaintiff Ezell Williams timely filed his charge of discrimination and retaliation within 180 days of the last discriminatory act. Plaintiff Ezell Williams hereby timely files his racial, retaliation, and equal pay claims within 90 days of the receipt of his Notice of Right to Sue from the Equal Employment Opportunity Commission."

3

527, 532 (11th Cir. 1992). The only other "named plaintiff" in this action is Anthony Long: the plaintiff in the first filed action, with which Ezell Williams' case has been consolidated. By order entered on May 29, 1996 in Mr. Long's file, however, this court ruled that he cannot serve as a class representative:

> While this Court is not overly restrictive on deficient pleadings which may be cured by amendment, it will not permit an amendment where possible injustice will result. In the present case, [Anthony Long's] counsel stated to RTM's counsel, in response to direct inquiry, that he represented plaintiff Long alone, and had no intent to represent a class. Defense counsel also specifically asked plaintiff [Long] in deposition if he intended to represent a class, and he stated he was suing on his behalf alone. (*Depo. of Long*, p. 330-31.) Consequently, all discovery has proceeded in preparation for an individual disparate treatment case, and plaintiff's tardy amendment will not be permitted.

Plaintiffs Long and Williams are represented by the same attorney. Defendant accordingly has argued, and this court agrees, that Williams' class action is a transparent attempt by plaintiffs' counsel to circumvent the order entered May 29, 1996 in Anthony Long's file.[3]

### B. Equal Pay Act Claim

Plaintiff Williams has no standing to represent a class under the Equal Pay Act, because he has not claimed discrimination in pay on the basis of sex. *See Schwartz v. Florida Board of Regents*, 807 F.2d 901, 907 (11th Cir. 1987)("under the Equal Pay Act, a

---

[3] Moreover, there is no evidence of the date of Long's EEOC charge, although there is some reference to a "right to sue" letter in correspondence by Long's attorney. Without evidence of Long's charge, this court still could not determine the temporal scope of the alleged Title VII class.

4

plaintiff must show 'that an employer pays different wages to employees of opposite sexes'").

## C.  § 1983 Claim

Furthermore, Williams has no standing to sue under 42 U.S.C § 1983, because he cannot prove defendant acted under color of state law, or with authority possessed by virtue of employment with the state. *Almand v. DeKalb County, Georgia*, 103 F.3d 1510, 1513, *reh'g denied*, 114 F.3d 1204 (11th Cir. 1997).

## D.  § 1981 Claim

### 1. Future employees

Plaintiff Williams plead sufficient claims of discrimination to possess individual standing to sue under 42 U.S.C § 1981. The class he seeks to represent, however, is overly broad, because he seeks to represent future employees who "might become employed by Defendant."

> This Court, by virtue of the jurisdictional limitations imposed by Article III of the United States Constitution, does not have authority to bind the parties before it in the absence of an actual case or controversy. Since future employees, by definition, do not exist, they are incapable of being injured in fact. Thus, there is no standing to litigate and claims of future employees are not ripe for resolution.

*Bremiller v. Cleveland Psychiatric Institute*, 898 F.Supp. 572, 579 (N.D. Ohio 1995); *see also Mathews v. Diaz*, 426 U.S. 67, 71 n.3, 96 S.Ct. 1883, 1887 n.3, 48 L.Ed.2d 478 (1976)(class certification erroneous because district court lacked jurisdiction over plaintiffs who "will be denied" enrollment in government program);

5

*Tucker v. Union Underwear Company, Inc.*, 144 F.R.D. 325, 327-28 (W.D. Ky. 1992).

Even if future employees possessed sufficient standing for inclusion in the proposed class, this court would not certify such a class because, "[i]f they were includable, then an unfavorable disposition of the litigation would bind them and prevent redress of discrimination not yet inflicted. If they are not includable, however, injunctive relief, if granted, would inure to their benefit." *Wilson v. Allied Chemical Corporation*, 456 F.Supp. 249, 255 n.5 (E.D. Va. 1978). Moreover, a class composed in part of future employees "is simply ephemeral on the facts of this case," and cannot be used to fulfill the numerosity requirement of Rule 23(a). *Scott v. University of Delaware*, 601 F.2d 76, 89 (4th Cir.), cert. denied, 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 189 (1979).

### 2. Temporal scope of § 1981 class

Williams has not attempted to define the temporal scope of the proposed class, but the class can include only those persons who could present valid claims on the date his action was filed. The statute of limitations for a § 1981 claim is determined by applying the state statute of limitations for personal injury claims. *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660-62, 107 S.Ct. 2617, 2620-21 (1987). In Alabama, personal injury claims must be brought within two years after the right of action accrues. *Alabama Code § 6-2-38(1)*. Plaintiff Williams' action was commenced on August 20, 1996. Thus, the temporal scope of a § 1981 class is limited to

6

adverse employment actions that occurred from August 20, 1994 to the present.

## II. RULE 23 REQUIREMENTS

A class action may be certified only if the court is satisfied that the requisite class qualifications of Rule 23(a) and either Rule 23(b)(1), or (b)(2), or (b)(3), *Fed.R.Civ.P.*, have been met. *See General Telephone Company of the Southeast v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d. 740 (1982). "It has long been the law that questions concerning class certification are left to the sound discretion of the district court." *Walker v. Jim Dandy Company*, 747 F.2d 1360, 1363 (11th Cir. 1984). Plaintiff asserts that only Rule 23(b)(2) applies. In relevant part, therefore, Rule 23 provides:

> **(a)   Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
>
> **(b)   Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> . . .
>
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole;

### A.   Rule 23(a) Requirements

The Supreme Court holds that "a Title VII class action, like any other class action, may only be certified if the trial court is satisfied, after rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Falcon*, 457 U.S. at 161, 102 S.Ct. at 2372. The commonality, typicality, and adequacy of representation requirements of Rule 23(a) involve an analysis of the "nexus"[4] between the named plaintiff and the alleged class to ensure that the named plaintiff "possesses the same interest and suffer the same injury as class members." *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977)(internal quotations omitted).

### 1. Commonality and typicality

The Supreme Court notes that "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Falcon*, 457 U.S. at 158 n.13, 102 S.Ct. at 2371 n.13. Therefore, those requirements are considered simultaneously. Together, they

> serve as guideposts for determining whether under the particular circumstances maintenance of the class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest.

*Falcon*, 457 U.S. at 158 n.13, 102 S.Ct. at 2371 n.13.

### (a) Conclusory allegations of typicality

---

[4] The term "nexus" first was used in a Title VII class action by the former Fifth Circuit. *Huff v. N.D. Cass. Company*, 485 F.2d 710, 714 (5th Cir. 1973).

8

"[T]he typicality provision requires a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff. ... Proof of typicality requires more than general conclusory allegations." *Belles v. Schweiker*, 720 F.2d 509, 515 (8th Cir. 1983). Plaintiff Williams' "proof" of typicality (if it may be called that) is encompassed within three sentences of his attorney's brief:

> In the instant case, some potential plaintiffs may already be RTM employees, others might have been employees but were never considered because of their race, others have since left the employment of RTM, and still others may apply for future employment. In any event, they all seek the same relief--to be treated equally with their white counterparts. The "typicality" requirement for a class action is thus also met.

(Plaintiff's brief, at 9.) That argument is not sufficient to satisfy the typicality requirement, and certification could be denied solely for Williams' failure to present adequate proof thereof.[5] Even if this court were to accept plaintiff's conclusory statements, however, the class would remain too broadly defined.

### (b) Applicants for employment

In *Falcon*, the Supreme Court rejected an "across the board" theory that all suits alleging discrimination on the basis of membership in a protected class are by definition class actions. *Id.*, 457 U.S. at 154, 102 S.Ct. at 2368. The court acknowledged

---

[5] In claiming a "pattern and practice" of discrimination, plaintiff presented the personnel files of eleven African-American employees, and alleged six were paid less than white managers. Plaintiff's claims may be typical of those employees, but, as discussed *infra*, those employees are not sufficient to fulfill the numerosity requirement.

9

that, speaking loosely, "racial discrimination is by definition class discrimination," but went on to explain that,

> [c]onceptually, there is a wide gap between (a) an individual's claim that he has been denied a promotion on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims share common questions of law or fact and that the individual's claim will be typical of the class claims.

*Id.*, 457 U.S. at 157, 102 S.Ct. at 2370.

Yet, *Falcon* did not completely foreclose the possibility of certification of a class that includes both employees and applicants for employment. In the "now-famous footnote 15,"[6] the Court said "[s]ignificant proof that an employer operated under a general policy of discrimination conceivably could justify a class of both applicants and employees if the discrimination manifested itself in hiring and promotion practices in the same general fashion, such as through entirely subjective decisionmaking processes." *Id.*, 457 U.S. at 159 n.15, 102 S.Ct. at 2371 n.15.

Although the Supreme Court has not delineated what quantum or character of proof constitutes "[s]ignificant proof that an employer operated under a general policy of discrimination," the evidence must be sufficient to overcome the rule that "[i]ncumbent employees generally cannot represent a class containing unsuccessful applicants." *Washington v. Brown & Williamson Tobacco*

---

[6]II B. Lindemann & P. Grossman, *Employment Discrimination Law* 1584 (3d ed. 1996).

10

*Corporation*, 959 F.2d 1566, 1570 (11th Cir. 1992); *see also Griffin v. Dugger*, 823 F.2d 1476, 1483-84 (11th Cir.), *cert. denied*, 486 U.S. 1005, 108 S.Ct. 1729, 100 L.Ed.2d 193 (1987); *Walker v. Jim Dandy Co.*, 747 F.2d 1360, 1364-65 (11th Cir. 1984).

Plaintiff Williams' allegations of discrimination in promotion, job placement, hiring, recruitment, pay, job transfers, and "other terms and conditions of employment" (Complaint at ¶ 16) represent the exact type of "across-the-board" attack the Supreme Court sought to eliminate. Mr. Williams, however, does not allege, and certainly offers no proof (much less "significant proof"), that defendant operated under an "entirely subjective decision making process."[7]

This court concludes there is not "significant proof" of a general policy by defendant to discriminate in its hiring, promotional, and pay decisions. Thus, plaintiff Williams cannot establish the commonality and typicality requirements of Rule 23(a) in relation to claims by prospective class members who were applicants for employment with defendant, and those persons accordingly are to be excluded from the potential class.[8]

---

[7]In fact, the only evidence regarding RTM Alabama's decision making process is found in the evidentiary submissions of <u>defendant</u>, not plaintiff Ezell Williams. Defendant's vice president for operations, Adam George, states that he (together with defendant's directors of operations and area supervisors) made decisions on hiring managerial applicants, but he provides no insight on the criteria or process for hiring. (George affidavit, at ¶¶ 6, 7.) George also states store managers have authority to hire hourly wage employees, but again fails to indicate the criteria or process for hiring. *Id.*, at ¶ 10.

[8]Plaintiff's affidavit infers he was the victim of a discriminatory hiring practice, and is entitled to represent applicants. His brief, however, wisely omits any such argument. Plaintiff was hired approximately six weeks after his initial interview; therefore his claims are not typical of applicants who were

11

### (b) Geographic scope

Without argument or evidence, Ezell Williams attempts to represent a class of employees encompassing the entire State of Alabama. To certify a state-wide class, however, this court must find a centralized decision-making process which could be responsible for such discrimination. *See Stastny v. Southern Bell Telephone and Telegraph Company*, 628 F.2d 267, 278 (4th Cir. 1980)(plaintiff's "bald assertion" of statewide discrimination was contradicted by evidence of local autonomy at separate facilities); *Zapata v. IBP, Inc.*, 167 F.R.D. 147, 159 (D. Kan. 1996)("the majority of the working conditions of which plaintiffs complain result from decentralized employment decision making, and thus are insufficient to satisfy the commonality requirement"); *Duffy v. C. Itoh & Co. (America), Inc.*, 1990 WL 144862 (S.D.N.Y. 1990)(court unpersuaded that defendant's personnel administration was centralized so that gender discrimination was systemic); *Rosenberg v. University of Cincinnati*, 654 F. Supp. 774, 778 (S.D. Ohio 1986) ("where employment decisions are subject to nearly complete local or departmental autonomy, the commonality/typicality requirement will not have been met").

The only evidence of defendant's decision-making process demonstrates that the class must be limited to the North Alabama

---

denied employment. *International Union v. LTV Aerospace and Defense Company*, 136 F.R.D. 113 (N.D. Tex. 1991)(female plaintiff hired after filing suit could not represent unhired applicants). Furthermore, plaintiff would not be an adequate representative, because he arguably is an example of fair hiring of African-Americans by defendant, and could be called as a witness against the very class he seeks to represent. *James v. Family Mart*, 1980 WL 307 at * 1 (M.D. Ala. 1980).

12

area. During the relevant time period, plaintiffs Long and Williams were employed in the North Alabama area, and former defendant Tracey Butler[9] was their area supervisor. (George Affidavit, at ¶ 4.) Butler reported directly to defendant's vice president for operations, Adam George. *Id.* George had final authority over all promotion and hiring decisions within Butler's area. (*Id.* at ¶ 6.)

Butler's counterparts in RTM Alabama's other areas, however, reported to a different official: a <u>director</u> (as distinguished from the <u>vice president</u>) of operations, who had final authority on hiring and promotional decisions. *Id.* That director of operations frequently consulted vice president for operations Adam George about hiring decisions, but George's approval was not required. *Id.* After Tracey Butler left defendant's employment in August of 1995, the stores which he supervised were assigned to other area supervisors. (*Id.* at ¶5.) A second director of operations also was appointed; and all area supervisors reported initially to that director, rather than vice president Adam George. (*Id.* at ¶ 4.)

RTM Alabama's decision-making process thus is not sufficiently centralized to warrant a state-wide class. From 1994 to 1995, hiring decisions in plaintiff's area were made by Adam George, but George made no hiring decisions for any other part of the state. Since 1995, hiring decisions have been made by two directors of operations, who have authority over separate areas of the state.

---

[9] This court's order of June 17, 1997 dismissed with prejudice all federal claims against Butler.

13

## 2. Adequacy of representation

Rule 23(a)'s adequacy of representation requirement involves questions of whether: (1) plaintiff has interests antagonistic to those of the rest of the class; and (2) plaintiff's counsel is qualified, experienced, and generally able to conduct the proposed litigation. *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985).

### (a) Antagonistic interests with potential class members

Plaintiff Williams' complaint demonstrates he wishes to represent hourly-wage employees, as well as similarly situated managerial employees. Williams' personnel file, however, reveals he was responsible for evaluating, warning, and terminating hourly-wage employees. (Plaintiff's Personnel File: RTM Management Training Program, at 29.) While not explicitly stated in either party's evidence, the court presumes Williams' evaluations would directly affect hourly-wage employees' promotional and pay opportunities. In that regard, the District of Columbia Circuit has noted that:

> [s]upervisory employees are often inappropriate representatives of nonsupervisory employees because the structure of the workplace tends to cultivate distinctly different interests between the two groups. Although each group shares the interest in freedom from discrimination, potential conflicts may and do arise within a class including both. ... In the instant case, supervisors who are members of the proposed class have been responsible for evaluating the performances of other members of the class ... .

*Wagner v. Taylor*, 836 F.2d 578, 595 (D.C. Cir. 1987); *see also Appleton v. Deloitte & Touche L.L.P.*, 168 F.R.D. 221, 233 (M.D.

14

Tenn. 1996)(nonsupervisory employees should not be in the class because supervisors have been responsible for evaluating their performance); *Gilchrist v. Bolger*, 89 F.R.D. 402, 408 (S.D. Ga. 1984), *aff'd in relevant part*, 733 F.2d 1551, 1554-56 (11th Cir. 1984)(named plaintiffs, nonsupervisory personnel, had interests antagonistic to those of supervisory personnel in class).

Ezell Williams' interests thus are antagonistic to nonsupervisory, hourly-wage class members, because he inevitably made decisions directly affecting their claims for promotion and pay raises. In fact, plaintiff Williams conceivably could be called by defendant to testify regarding the qualifications of other class members for pay increases. Thus, he would be placed in the position of challenging and defending employment decisions related to hourly-wage, nonsupervisory employees. Such a conflict cannot be resolved. Accordingly, hourly-wage employees are to be excluded from the proposed class.

### (b) Adequacy of counsel

This court also finds plaintiffs' counsel is not sufficiently qualified, experienced, or generally able to conduct the proposed class litigation. "The role of class counsel is akin to that of a fiduciary for the class members." *Kingsepp v. Wesleyan University*, 142 F.R.D. 597, 599 (S.D.N.Y. 1992). Thus, where plaintiff's counsel demonstrates an inability to adequately represent the proposed class, denial of certification is proper. *Wrighten v. Metropolitan Hospitals, Inc.*, 726 F.2d 1346, 1352 (9th Cir.

15

1984)("The court correctly perceived a danger that counsel then in the case could take a good case and lose it for a large class").

After careful scrutiny of the conduct of plaintiffs' attorney, this court cannot find "that plaintiff's counsel has thus far demonstrated ... that strict standard of excellence demanded of attorneys in complex class-oriented civil rights litigation." *Parker v. Kroger Company*, 1976 WL 713 at *8 (N.D. Ga. 1976). The following incidents demonstrate counsel's inability to manage complex class action litigation:

   1. Counsel either failed to complete the basic step of filing a charge of discrimination with the EEOC, or failed to present evidence of such charge to this court. Consequently, the interests of the class were limited to claims under 42 U.S.C. § 1981.

   2. Counsel asserts claims under 42 U.S.C. § 1983 which cannot possibly be claimed against a private actor, such as defendant, and alleges no facts of sex discrimination to support an Equal Pay Act claim.

   3. Counsel attempted to amend the class complaint simply by adding the names of two putative plaintiffs, but failed to plead the alleged discrimination suffered by those plaintiffs. Consequently those amended claims were dismissed.

   4. The brief filed by counsel in support of class status contains nothing but vague, conclusory statements that the requirements of Rule 23 are "clearly" or "obviously" fulfilled, and makes no attempt to apply law to fact for the benefit of this court.

Those deficiencies demonstrate that the proposed class would not be adequately represented. *See Kingsepp v. Wesleyan University*, 142 F.R.D. at 602 (where "[p]laintiff's memorandum in support of class certification provides little more than a recitation of the requirements of Rule 23 and conclusory statements that the

16

requirements are met in this case," counsel has failed to adequately represent class); *Dunn v. Midwest Buslines, Inc.*, 94 F.R.D. 170, 172 (E.D. Ark. 1982)(counsel's inability to state a proper class action complaint, errors in class brief, and conduct of counsel during deposition, indicate inadequate representation); *Smith v. Josten's American Yearbook Co.*, 78 F.R.D. 154, 163-64 (D. Kan. 1978), *aff'd*, 624 F.2d 125 (10th Cir. 1980)(one factor in finding inadequate representation was that "statutes charged in the complaint range from the proper, to the questionable to the absurd in light of the type of discrimination alleged"); *Parker v. Kroger Company, Inc.*, 1976 WL at *8 (inadequate representation because of "procedural morass" caused by counsel's lack of familiarity "with even the most fundamental jurisdictional prerequisites of Title VII litigation," and by counsel's failure to accompany a motion to amend with proposed amendment").  While the inadequacy of representation is sufficient to deny class certification, the court further finds the proposed class lacks the requisite numerosity.

### 3.  Numerosity

This court has determined that plaintiff Williams defined his class too broadly, and that he does not meet Rule 23(a) requirements for representing: future employees; applicants for employment; hourly-wage nonsupervisory employees; or, employees outside the North Alabama area.  Nevertheless, "if the plaintiff's definition of the class is found to be unacceptable, the court may construe the complaint or redefine the class to bring it within the scope of Rule 23."  Wright, Miller, & Kane, Federal Practice &

17

Procedure: Civil 2d § 1759, pp. 111-12. Therefore, this court redefines plaintiff's description of the class as follows:

> Those African-American persons who are now, or previously were employed in managerial positions within defendant's North Alabama area, and who have been subjected to unlawful discrimination in terms of pay or promotional opportunities on the basis of race.

Adam George's affidavit establishes that up to seven caucasian and four African-American persons were promoted to unit manager positions during the relevant time period. (George Affidavit, at ¶ 13.) Only African-American employees were promoted to assistant manager positions. (*Id.* at ¶ 12.) Thus, the number of potential plaintiffs with claims for race discrimination in promotional opportunities is seven.

George's affidavit also establishes that eleven African-Americans,[10] including plaintiffs Williams and Long, were employed as unit managers or assistant managers during the relevant time period.[11] (George Affidavit, ¶¶ 11, 12, and Exhibit "A".) Thus, the number of potential plaintiffs with claims for racially discriminatory pay disparity is eleven.

---

[10] They include: Wilbur Cooper, Gwen Jones, Pat Coston, Isaac Gurley, Anthony Long, Obadiah Scruggs, Johnny Ward, Kimona Tolbert, Travis Hereford, and Ezell Williams.

[11] The court notes a discrepancy between the figures contained in George's affidavit, and the representations found in the charts accompanying that affidavit. This court has not considered hiring claims, but the affidavit states that 7 African-Americans were hired or promoted into assistant manager positions during the relevant time. The affidavit also states that 4 African-Americans were hired or promoted into unit manager positions during the relevant time. Those two figures total 11 alleged African-American managers, but the charts following George's affidavit only total 10. Thus, this court will assume there is an eleventh employee whose pay scale is not reflected in the charts following George's affidavit.

18

Even if this court assumes that those persons with pay claims are distinct from those with promotion claims, Williams' class still would contain no more than seventeen members. Clearly, a class comprised of seventeen members is not so numerous that joinder of all members is impracticable. See *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir.), *cert. denied*, 479 U.S. 883, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986)("while there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty is adequate, with numbers between varying according to other factors")(internal quotations omitted); *Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980), *cert. denied*, 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981)(class of 31 not so numerous that joinder impracticable). Accordingly, plaintiff has failed to meet the numerosity requirement of Rule 23(a).

**B.    Rule 23(b)(2) Requirements**

It is unnecessary to render findings of fact regarding Rule 23(b) requirements for class certification, because plaintiff failed to establish the prerequisites under 23(a). See *Hall v. National Recovery Systems, Inc.*, 1996 WL 467512, *5 (M.D. Fla. August 9, 1996)("[b]ecause plaintiff has failed to certify a class under Rule 23(a), it is unnecessary for the Court to address the requirements of Fed.R.Civ.P. 23(b)"); *Williams v. Glickman*, 1997 WL 198110, at *1 n.2 (D.D.C. April 15, 1997)("[t]he Court will only address the requirements of Rule 23(a), as the plaintiffs' failure to meet these requirements makes it unnecessary to analyze Rule 23(b)").

19

## III. CONCLUSION

For the foregoing reasons, plaintiff Ezell Williams' motion for class certification is due to be denied. An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this 11th day of August, 1997.

United States District Judge