FILED

-99 APR 21 PM 2: 37

U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

|                      |   |                                    |
|----------------------|---|------------------------------------|
| ANTHONY LONG,        | ) |                                    |
|                      | ) |                                    |
| Plaintiff,           | ) |                                    |
|                      | ) |                                    |
| vs.                  | ) | **Civil Action No. CV-95-S-2808-NE** |
|                      | ) |                                    |
| RTM ALABAMA, INC.,   | ) | **ENTERED**                        |
|                      | ) |                                    |
| Defendant.           | ) | APR 2 1 1999                       |

## MEMORANDUM OPINION

Plaintiff, Anthony Long, is an African-American male alleging
that defendant RTM violated Title VII of the Civil Rights Act as
amended, 42 U.S.C. § 2000e *et seq.*, by subjecting him to a racially
hostile work environment. This action presently is before the
court on defendant's supplemental motion for summary judgment filed
in response to the memorandum opinion entered on October 13, 1998
(Doc. No. 148). In that opinion, this court advised the parties to
consider two decisions the Supreme Court handed down while this
litigation was proceeding which may bear directly on the remaining
claim for a racially hostile work environment: *i.e.*, *Burlington
Industries, Inc. v. Ellerth*, ___ U.S. ___, 118 S.Ct. 2275, 141
L.Ed.2d 633 (1998); and *Faragher v. City of Boca Raton*, ___ U.S.
___, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). Thus, defendant has
filed the aforementioned motion in which it asserts the affirmative
defense established in those recent Supreme Court decisions.

179

In a subsequent order entered December 29, 1998 (Doc. No. 170), the court reassured plaintiff: "The court will entertain arguments on <u>only</u> this issue, and will not reconsider any of the issues that were before the court per the preceding summary judgment motion." (Emphasis in original.) Nevertheless, defendant now seeks to argue plaintiff cannot establish a prima facie case of hostile work environment harassment, an argument defendant did not present for this court's consideration during the original summary judgment stage of this litigation.

## I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. ..." (Emphasis added.) The movant bears the initial burden of showing the court, by reference to materials on file, that no genuine issues of material fact exist to be decided at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir.

1991).  The moving party discharges this burden by "showing" or

"pointing out" to the court that there is an absence of evidence to

support the non-moving party's case.  *Jeffery v. Sarasota White*

*Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995)(*per curiam*).  Rule 56

permits the movant to discharge this burden with or without

supporting affidavits.  *See Celotex*, 477 U.S. at 324, 106 S.Ct. at

2553.  When the moving party has discharged its burden, the

non-movant must go beyond the pleadings and designate specific

facts showing there is a genuine issue for trial.  *See Jeffery*, 64

F.3d at 593.

In deciding whether the moving party has met its burden, the

court is obligated to draw all inferences from the evidence

presented in the light most favorable to the non-movant and, also,

to resolve all reasonable doubts in that party's favor.  *See Spence*

*v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).  Inferences in favor

of the non-movant are not unqualified, however.  "Mere general

allegations which do not reveal detailed and precise facts will not

prevent the award of summary judgment."  *Resolution Trust Corp. v.*

*Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted).

Moreover, evidence that is merely colorable, *see Brown v. City of*

*Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see*

3

*Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989), or conjectural, does not create a genuine issue of material fact.

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. *See Augusta Iron & Steel Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). A "genuine" dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffery*, 64 F.3d at 594 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512.

With the foregoing standards in mind, the following facts either are not disputed, or are stated in a light most favorable to plaintiff.

4

## II. FACTS[1]

RTM Alabama, Inc. ("RTM") operates a "chain" of Arby's restaurants in Alabama. Plaintiff Anthony Long was hired as a "team member" at one of RTM's stores in Huntsville, Alabama on July 1, 1991. RTM promoted Long to the position of assistant manager on October 5, 1992, and paid him an annual salary of $17,500. Long received a salary increase to $18,500 on May 13, 1993. Long voluntarily resigned his employment with RTM on October 18, 1993. (*See* Barton affidavit ¶ 8.) Throughout this tenure, Tracy Butler was the Area Supervisor[2] over the store where Long worked.

Anthony Long reapplied for employment with RTM. He was aware that Butler still was the Area Supervisor and that the position for which he was applying fell within Butler's area. (*See* Plaintiff's deposition, at 54.) Long was rehired as a "team leader" at an hourly wage of $5.75 on May 30, 1994. Long was promoted to assistant manager on June 18, 1994, with an attendant annual salary of $20,000. He received a raise to $21,500 on May 29, 1995.

---

[1] For a more complete recitation of all facts involved in this action, see the memorandum opinion entered October 13, 1998 (Doc. No. 148). Here, the court will address only those facts arguably relevant to the hostile work environment claim and the defendant's affirmative defense.

[2] The Area Supervisor is responsible for oversight and management of several RTM restaurants in North Alabama. (George affidavit ¶ 4.)

5

APR-21-1999  15:28    205 551 0741    P.014/026

## A.   Objectionable Incident

During July of 1995, Anthony Long worked as an assistant manager at the Arby's Restaurant on University Drive in Huntsville, Alabama. He complains of an incident that allegedly occurred there on July 7, 1995: "On that day, I was physically assaulted by Tracy Butler, who was then the Defendant's and my Area Supervisor. Mr. Butler also called me a liar and a boy." (Plaintiff's affidavit, at p. 1.)

This incident marks the first time in Long's tenure under Butler that he heard Butler use the term "boy." Other African-Americans worked in this restaurant with Long, including Obadiah Scruggs (an African-American male) who was a manager of the restaurant.

## B.   RTM's Complaint Procedure

RTM has three complaint resolution procedures that were in place at all times during Long's employment.   (See Barton affidavit, exhibit A.)  The first such procedure is found in the "RESPECT" policy.   Employees, including Long,[3] are trained and notified of this program.   Pursuant to the RESPECT policy, all RTM employees are taught that discrimination and harassment are prohibited and that an aggrieved employee should report any conduct

---

[3] "Long had been trained on this RESPECT policy on several occasions." (Barton affidavit, ¶ 5.)

6

that violates the policy. One principle enumerated in the policy
is that of "equality in treatment," which was defined as treatment
not affected by one's "race, gender, religion, age, disability, or
national origin." (*Id.*) The portion specifically discussing
harassment, however, focuses on sexual harassment.

RTM also operates a "Silent Witness Program" called CEAP. The
CEAP program provides a toll-free telephone number which employees
could use to report conduct they suspected to be illegal or
improper. The line is accessible constantly, and the operation
guarantees anonymity to the reporting employee. This procedure,
along with the other two, is detailed in the employee handbook.

The third procedure invites "[a]ny employee who feels that RTM
has acted unfairly [to] file a grievance and have upper management
review the action ... [by contacting the] Area Supervisor or
Director of Operations to voice [the] problem." (*See* Barton
affidavit, exhibit A.) The policy assures that the Senior Vice
President of Human Resources will get involved if the employee is
dissatisfied with RTM's response.

## C. Response to Long's Complaint

Anthony Long contacted RTM's Vice President of Operations,
Adam George, on July 7, 1995, to complain about the altercation
with Butler and inform George that he considered Butler's remark a

7

racial slur. George encouraged Long to personally resolve the issue with Butler, and to contact George if he was unable to do so. Long met with Butler for several hours on the evening of July 7, 1995; two days later, on July 9, 1995, Long advised George that "everything had been taken care of." (Plaintiff's deposition, at 342.)

The following day, however, Long notified George and Sharon Barton, Senior Vice President of RTM, of his intent to file an internal complaint involving the July 7 incident. (*See id.* at 106-07.) Thus, George traveled to Huntsville on July 11, 1995, to conduct an investigation of Long's complaint. As a result of this investigation, George informed Butler his employment would be terminated. (*See* George deposition, at 470.) George issued a final written warning to Butler, but his decision to terminate Butler had to gain approval from the corporate office before becoming effective. (*See id.*, at 466.) Such approval was delayed, in part, by Barton's absence from work due to personal reasons. (*See id.* at 467-68.) Butler was allowed to resign instead, however, because he was a long term employee of RTM. (Barton affidavit, ¶¶ 9, 10.) The termination would not have become effective until August 17, 1995.

8

Long refused to cooperate in George's investigation. (*See* Plaintiff's deposition, at 132.) Instead, he filed a charge of discrimination with the Equal Employment Opportunity Commission on July 14, 1995. (*Id.* at 147-48.) After receiving a notice of right to sue, Long filed the present action.

### III. DISCUSSION

This court will discuss below what is required to establish a prima facie case of hostile work environment harassment. The court will do so only as an effort to clarify the issues in this action. The court will not entertain arguments RTM first asserts at this late stage, other than those on the issue of the newly established affirmative defense. A discussion of the affirmative defense and its availability to RTM then will follow.

### A.  Prima Facie Racially Hostile Work Environment Claim

The elements of a prima facie case for a racially hostile work environment claim are: (1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based upon the employee's race; and (4) the harassment complained of affected a "term, condition, or privilege" of employment, in that it was "sufficiently severe or pervasive to alter the condition of [the victim's] employment and create an abusive working environment." *Cf. Henson v. City of*

9

*Dundee*, 682 F.2d 897, 903-05 (11th Cir. 1982) (sexual harassment);

*see also Bivins v. Jeffers Vet Supply*, 873 F. Supp. 1500, 1507

(M.D. Ala. 1994) (race).

This fourth element is what defendant now contends Anthony

Long cannot establish. RTM argues that the one isolated incident

of which Long complains cannot establish the requisite severity or

pervasiveness.

Courts consider a number of factors to determine whether

conduct can be severe or pervasive. Speaking for a unanimous court

in *Harris v. Forklift Systems*, the case RTM relies upon, Justice

O'Connor said the issue of

> whether an environment is "hostile" or "abusive" can be
> determined only by looking at all the circumstances.
> These may include the frequency of the discriminatory
> conduct; its severity; whether it is physically
> threatening or humiliating, or a mere offensive
> utterance; and whether it unreasonably interferes with an
> employee's work performance.    The effect on the
> employee's psychological well-being is, of course,
> relevant to determining whether the plaintiff actually
> found the environment abusive. But while psychological
> harm, like any other relevant factor, may be taken into
> account, no single factor is required.

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367,

371, 126 L.Ed.2d 295 (1993).

*Harris* reaffirmed the holding of *Meritor Savings Bank v.*

*Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49

10

(1986), that harassment must either be severe or pervasive in order to be actionable, but stressed that such factors must be measured by an "objective standard": *i.e.*, that which a reasonable person would find hostile or abusive.

> As we pointed out in *Meritor*, "mere utterance of an epithet which engenders offensive feelings in an employee" ... does not sufficiently affect the conditions of employment to implicate Title VII. Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

*Harris*, 510 U.S. at 21-22, 114 S.Ct. at 370-71. In a concurring opinion, Justice Scalia emphasized that "[t]oday's opinion elaborates that the challenged conduct must be severe or pervasive enough 'to create an objectively hostile or abusive work environment — an environment that a reasonable person would find hostile or abusive.'" *Id.* at 24, 114 S.Ct. at 373 (Scalia, J., concurring).

The Supreme Court recently emphasized that "simple teasing, ... off hand comments, and isolated incidents (<u>unless extremely serious</u>) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 118 S.Ct. at 2283 (citation

11

and internal quotation marks omitted) (emphasis supplied).  *See*
*Rogers v. EEOC*, 454 F.2d 234 (5th Cir. 1971)[4], *cert. denied*, 406
U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972) ("mere utterance of
an ethnic or racial epithet which engenders offensive feelings in
an employee" would not affect the conditions of employment to
sufficiently significant degree to violate Title VII); *see also*
*Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1189 (2d Cir. 1987) (to
be deemed pervasive, the conduct must be more than episodic; it
must be sufficiently continuous and concerted), *overruled on other*
*grounds by Patterson v. McLean Credit Union*, 491 U.S. 164, 109
S.Ct. 2362, 105 L.Ed.2d 132 (1989); *Katz v. Dole*, 709 F.2d 251, 256
(4th Cir. 1983) (isolated incidents generally not sufficient to
create hostile working environment); *Baskerville v. Culligan*
*International Co.*, 50 F.3d 428, 430 (7th Cir. 1995) ("A handful of
comments spread over months is unlikely to have so great an
emotional impact as a concentrated or incessant barrage.").

Thus, a question arises as to whether the isolated incident[5]
between Anthony Long and Tracy Butler was sufficiently serious,

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

[5] See note 6 *infra* and accompanying text, which maintain the focus of Long's hostile work environment claim on the lone incident between Long and Butler which Long complained about.

12

*i.e.,* "extremely serious," to "amount to discriminatory changes in the terms and conditions of employment." *Faragher,* 118 S.Ct. at 2283. Now, this is a jury question.

## B.   The Affirmative Defense for Employers

This court recognizes what used to be the fifth element of a prima facie case — *i.e.,* establishing the employer's liability under the doctrine of *respondeat superior, see, e.g., Bivins*, 873 F. Supp. at 1507 — has been altered by the Supreme Court in the recent decisions of *Paragher*, 118 S.Ct. 2275, and *Burlington Industries, Inc.*, 118 S.Ct. 2257. Although those cases addressed sexual harassment claims, the court finds that the logic of the decisions applies "with equal force" to claims of harassment based on race. *Wright-Simmons v. City of Oklahoma City*, No. 96-6203, 1998 WL 614414, at *7 (10th Cir. 1998); *see also Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 1998 WL 654810, at *12 (5th Cir. 1998).

The Supreme Court extensively analyzed the vicarious liability of employers for harassment by supervisory employees. In *Faragher*, the Court, adopting the holding in *Burlington Industries*, held that "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a

13

supervisor with immediate (or successively higher) authority over

the employee."  118 S.Ct. at 2292-93.

Although the Court apparently eliminated the liability element

of a prima facie case under certain circumstances, it also granted

employers an affirmative defense to this vicarious liability which

they can raise when no tangible employment action has been taken

against the plaintiff.

> The defense comprises two necessary elements: (a) that
> the employer exercised reasonable care to prevent and
> correct promptly any ... harassing behavior, and (b) that
> the plaintiff employee unreasonably failed to take
> advantage of any preventive or corrective opportunities
> provided by the employer or to avoid harm otherwise.

Id. at 2293.  The Court based the affirmative defense on the

following rationale:

> If the plaintiff unreasonably failed to avail herself of
> the employer's preventive or remedial apparatus, she
> should not recover damages that could have been avoided
> if she had done so. If the victim could have avoided
> harm, no liability should be found against the employer
> who had taken reasonable care, and if damages could
> reasonably have been mitigated no award against a liable
> employer should reward a plaintiff for what her own
> efforts could have avoided.

Id. at 2292.

RTM contends that it has established both prongs of the

affirmative defense.  It argues that the three methods it provides

for employers to register complaints of harassment satisfy the

14

first prong which requires that an employer show it "exercised

reasonable care to prevent and correct promptly any ... harassing

behavior." (Defendant's brief in support, Doc. No. 167, at 9.)

Furthermore, RTM claims Long "never reported any violations of the

RESPECT policy, never called the CEAP hotline and never directly

contacted the senior vice president of human resources to institute

a complaint ...." (*Id.*) RTM also identifies Long's failure to

participate in the investigation of the incident he reported. RTM

argues that these failures establish the second prong of the

affirmative defense.

   This court agrees that RTM has established the first prong of

the defense. With regard to the second prong, RTM undoubtedly can

establish this prong and thus the affirmative defense for any

conduct about which Long did not complain.[6] Long did complain

about the incident of July 7, however.

   Although RTM says that Long did not invoke the third grievance

procedure because he "never directly contacted the senior vice

president of human resources" (*id.*), the procedure allows him to

---

[6] Throughout this litigation, Long has alleged only one incident as the
grounds for his hostile work environment claim. It appears from his responses
to the present motion that Long may attempt to include other incidents to
establish his claim. The facts alleged, the pleadings, and the affirmative
defense will bar any such expansion. In any event, Long's claim must rest on the
single incident that he reported, the incident between him and Butler which
allegedly occurred on July 7, 1995.

15

contact the Area Supervisor or Director of Operations before going

to the Senior Vice President of Human Resources.  Long did contact

George, RTM's Vice President of Operations, and Barton, Senior Vice

President of RTM.    The Area Supervisor was Butler, the alleged

harasser.  <u>If</u> that effort was not in compliance with RTM's third

grievance procedure, a question of fact arises as to whether Long

"<u>unreasonably</u> failed to take advantage of any preventive or

corrective opportunities provided by the employer or to avoid harm

otherwise."  *Faragher*, 118 S.Ct. at 2293 (emphasis supplied).  That

said, RTM's argument regarding Long's refusal to participate in the

investigation may help RTM establish an "unreasonable failure,"

whether or not Long's complaint fell within the parameters of the

grievance procedure.

Accordingly, this court finds that genuine issues of material

fact exist as to whether RTM can establish the affirmative defense.

In any event, Long may rely only on the incident of July 7, 1995 to

establish he was subjected to a hostile work environment.

### III. CONCLUSION

Upon consideration of the pleadings, evidentiary submissions,

and  briefs  of  the  parties,  this  court  finds  defendant's

supplemental motion for summary judgment is due to be denied.  An

16

order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this the 21st day of April, 1999.

_____
United States District Judge

17